Emanuel Morris, Appellant, v. J. H. Silver, Appellee.

Gen. No. 41,741.

Heard in the third division of this court for the first district at the June term, 1941. Opinion filed January 7, 1942.

HERSHENSON & HERSHENSON and EMANUEL MORRIS, all of Chicago, for appellant.

KLENHA & GREENFIELD, of Chicago, for appellee; LEON A. SEMERAK, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Samuel W. Handler, who operated a sales office in Chicago for the Merckens Chocolate Company of Buffalo, New York, died, leaving as his heirs and next of kin his widow, Estelle R. Handler, and one daughter, Fern Handler. In 1935 the probate court of Cook county appointed the widow administratrix of the estate. She filed an inventory. Mrs. Anna Lyman and Miss Rose Handler are sisters of decedent and Michael D. Handler is a brother. Harry M. Ehrlich, an attorney at law, represented Samuel W. Handler during his lifetime and was acquainted with his business affairs. J. H. Silver, an attorney at law, was retained by the administratrix as attorney for the estate. Anna Lyman retained attorney at law Maurice S. Weinzelbaum to represent her in prosecuting a claim against the estate. The claim was filed and Emanuel Morris, an attorney at law, who, for 15 years had specialized in probate court practice, was called in as associate counsel by Attorney Weinzelbaum. Mr. Morris tried the case in behalf of the claimant and on July 19, 1939 succeeded in having Mrs. Lyman's claim allowed in the sum of $11,790. The administratrix perfected an appeal to the circuit court. Mr. Morris, on behalf of the claimant, petitioned the probate court to remove the administratrix, asserting that she, as an individual,

had collected $12,000 on an insurance policy, the proceeds of which should be inventoried as assets of the estate, and that hence she had an adverse interest. On August 11, 1939, the probate court removed Mrs. Handler as administratrix and appointed the Metropolitan Trust Company as administrator *de bonis non*. Mr. Ehrlich, who had been the attorney for Samuel W. Handler in his lifetime, was convinced that at the time of death the deceased had valid claims against various individuals and corporations, which claims had not been inventoried. He spoke to Mr. Morris about these claims. It was suggested that if assets could be discovered that the claim of Mrs. Lyman could be paid, the case on appeal settled and that the estate would benefit. Mr. Ehrlich told Mr. Morris that he had been urging Mr. Silver to attempt to collect such asserted claims, but that Silver had taken no action. Negotiations resulted in an agreement being signed on September 21, 1939, between Estelle R. Handler, individually and as administratrix, Fern Handler, her daughter, and Mrs. Anna Lyman, whereby Mrs. Handler and her daughter agreed to and did pay Mrs. Lyman $1,000 on her claim, and the further sum of $5,000 within ten days. The agreement further provided that a stipulation be executed for the dismissal of the appeal pending in the circuit court; that J. H. Silver and Emanuel Morris be appointed by Mrs. Handler and her daughter as their attorneys in fact to cause an investigation and examination to be made of the books, records and affairs of the deceased in order to discover the existence of any assets belonging to his estate and to execute an assignment; that the assignment and power of attorney should embrace claims and accounts not already inventoried or included in a petition filed in the probate court by the administrator *de bonis non*. This agreement also obligated Mrs. Lyman to approve an order vacating the order theretofore entered which had removed Mrs. Handler as administratrix, and to

approve an order dismissing a rule which had theretofore been entered against Mrs. Handler. Mrs. Lyman also promised to execute a receipt for the full amount of her claim upon the payment of the additional $5,000 stipulated in the agreement, and she also promised to pay the fees and charges, if any, allowed to the Metropolitan Trust Company. Mrs. Handler also promised to "immediately close said estate." As contemplated in the agreement, and on the same day Estelle Handler, individually and as administratrix, and Fern Handler, her daughter, executed a sealed instrument which assigned to Silver and Morris all claims, demands, notes, accounts and choses in action due and owing to the estate of Samuel W. Handler, deceased, "which may be discovered by an audit, investigation and examination of the books, records and affairs of Samuel W. Handler, deceased, excepting such assets that have been heretofore inventoried and are described in the petition filed by the Metropolitan Trust Company as administrator *de bonis non,* and other assets which are in the possession of Estelle R. Handler, administratrix." This assignment further provided that Silver and Morris should take possession of the property and effects so assigned and collect all such claims, accounts and choses in action as might prove collectible and execute all instruments necessary, and that with the proceeds Silver and Morris should pay " all the lawful expenses, costs, charges and commissions of executing and carrying into effect this assignment," and with the residue pay to Mrs. Lyman, her administrators, executors and assigns the sum of $5,790, such payments to be made from time to time as the proceeds were available. The assignment further provided that Silver and Morris should pay the rest, residue and remainder of the proceeds to Estelle R. Handler and Fern Handler, and that Silver and Morris "shall use such measures, legal or equitable, as in their discretion may be deemed proper

and necessary to enforce collections of the property and effects herein assigned, and to have an audit made of the affairs of the said Samuel W. Handler." Although Estelle R. Handler executed the assignment both individually and in her capacity as administratrix, at that time she was not an administratrix, having been removed. At the time the agreement and assignment were executed Emanuel Morris represented Mrs. Lyman, and J. H. Silver represented Mrs. Handler, Miss Handler and the estate of Samuel W. Handler, deceased. Following the execution of these documents, Ehrlich, who had been the attorney for the deceased during his lifetime, was retained. On September 26, 1939, Morris wrote Ehrlich a letter reading:

"You are hereby employed and retained by me as associate counsel in the matter of the estate of Samuel W. Handler, deceased, for the purpose of assisting the auditor and all parties interested in discovering assets in the estate which will inure to the benefit of the estate of Samuel W. Handler. In the event that you will be successful in securing assets which will enrich the said estate in the sum of $5,000.00 or more, you will therefore receive the sum of $500.00 as your fee in full payment. This moneys will be paid to you in the same proportion as the assets are collected to the extent of $5,000.00 out of our fees as they are received." In accordance with the terms of the agreement, Mr. Morris went into the probate court and had an order entered restoring Mrs. Handler as administratrix. Ehrlich retained Irving Taub & Company, accountants and auditors. This firm examined the records of Samuel W. Handler, deceased, for the period from January 1, 1932 to March 31, 1935, and submitted to Ehrlich a report of the result of such examination. This report revealed various claims which could be asserted by the administratrix. By reason of the audit and the services of Attorney Ehrlich, certain of the alleged creditors of the deceased, namely, Little Dutch Mill Candy

Corporation and parties named Barnet L. Stein and Frank Kaplan, agreed to pay the administratrix in full settlement of claims against them the sum of $10,250. This payment was made by a check delivered to J. H. Silver about the middle of December 1939. The check, payable to the order of Estelle R. Handler, as administratrix, was indorsed by her to J. H. Silver who deposited it in his special bank account. On December 14, 1939, Morris wrote a letter to Mr. Ehrlich, reading:

"Pursuant to my letter of September 26th, 1939, in which you were retained as associate counsel for the purpose of assisting the auditor and all parties interested in discovering assets for the estate of Samuel W. Handler, deceased, which would inure to the benefit of said estate I am enclosing herewith my personal check No. 955 dated December 14th, 1939, payable to your order, drawn on the American National Bank and Trust Company, for the sum of $500.00. This fee for your services was to be paid out of my fees for services as they are received by me. However, Mr. Silver has assured me that this payment to me would be paid tomorrow, and based upon this promise, I am giving you my check in advance with the understanding that you are to hold the same until I have received payment." On the bottom of the letter Ehrlich made the notation, "Received ck. No. 955 for $500, which I am to hold in accordance with the above." Ehrlich cashed the check on December 15, 1939. When Ehrlich received the $500 he delivered to Morris an invoice for $500 directed to the estate of Samuel W. Handler, deceased and Emanuel Morris, for professional services rendered by Ehrlich in connection with discovering assets, negotiating settlement and collecting $10,250 for the estate of Samuel W. Handler, deceased, in accordance with Morris' letter of September 26, 1939, which invoice Ehrlich marked, "Paid, 12/14/39." On December 15, 1939, Morris exhibited the receipt to Silver,

who gave Morris a check for $5,790 for Mrs. Lyman. Morris delivered to Silver the $500 receipt and also delivered to Silver a receipt in full in behalf of Mrs. Lyman. Silver paid Irving Taub & Company $250 for auditing the accounts of the deceased. Silver retained $1,500, which he asserted was allowed to him by the administratrix as fees in the estate of Samuel W. Handler, deceased, for the services he rendered from the time the estate was opened in 1935 until the estate should be closed. In September 1939, at the time the payment of $6,000 was made to Mrs. Lyman, a receipt for the full amount of the claim against the estate was given. On December 15, 1939, Morris indorsed on the agreement of September 21, 1939, a notation showing "payment of the balance in full." Thus Mrs. Lyman received payment in full for the claim allowed to her in the probate court in the sum of $11,790. On January 10, 1940, Emanuel Morris filed his statement of claim in the municipal court of Chicago, and averred that upon the request of defendant, he, plaintiff, advanced to Harry M. Ehrlich the sum of $500 in reliance upon the promise of the defendant that such sum would be reimbursed to plaintiff, together with the payment of plaintiff's charges and commissions. Plaintiff asked the court to enter judgment for the sum of $500 so advanced, and for a further sum of $500 due to him as reasonable "pro-rata charges and commissions in accordance with said assignment." Defendant denied any liability. A trial before the court and a jury resulted in a verdict for plaintiff in the sum of $1,000. Defendant's motion for a judgment notwithstanding the verdict was allowed and the court entered judgment against plaintiff for costs. This appeal followed.

Plaintiff states that a judgment *non obstante veredicto* cannot properly be rendered where the evidence on the issues is conflicting. The motion for a judgment notwithstanding the verdict presented to the trial court

a question of law, whether from the evidence in favor of the plaintiff, standing alone, and taken to be true, together with the inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff. Plaintiff also declares that the credibility of the witnesses, the weight of the evidence and the inferences to be drawn from that evidence, were questions for the jury. Defendant does not challenge these statements of the law. He does argue that neither plaintiff or defendant performed any legal services in the recovery of the $10,250. Defendant also asserts that he did not receive any fees under the terms of the assignment on which plaintiff predicates his claim. In addition to the propositions admitted by the pleadings and defendant's answers to pre-trial interrogatories, plaintiff testified in his own behalf. He also placed defendant on the stand as an adverse witness under the provisions of section 33 of the act governing the municipal court of Chicago. Testifying as an adverse witness, defendant stated that in allowing him to deduct the $1,500, Mrs. Handler said, "I owe you, I'll pay you $1,500 for handling this estate and you can now take your fee." Defendant testified to the effect that the $500 which plaintiff paid to Ehrlich was so paid as an inducement to defendant to turn the $5,790, the balance due Mrs. Lyman, over to plaintiff. It was the position of defendant that he wanted a receipt from Ehrlich so that he would be sure that no claim could be presented by Ehrlich against the Handler estate. Defendant also testified that Ehrlich was hired by plaintiff and not by defendant, or defendant's clients. Plaintiff testified that he did not receive any part of the $5,790, and that he was not reimbursed for any part of the $500 which he paid to Mr. Ehrlich. He further testified that he told defendant that he, plaintiff, would have to give Ehrlich a letter which would specify that the $500 fee would be paid by plaintiff personally, because Ehrlich did not want it to appear

that any fees were to be paid by either Silver or Mrs. Handler. Plaintiff further testified that the reasonable value of the services he rendered to defendant and defendant's clients was $2,500, but he is not claiming the reasonable value of his services. His theory is that he is entitled to $500 as reimbursement of the fee he paid to Ehrlich, and another $500 as one half of the fee which he assumes defendant was paid for services in connection with the collection of $10,250. Plaintiff's testimony is to the effect that at the time of the delivery of the assignment, defendant said to him, "We will get this money, you will get fifty percent of the fee and I will get fifty percent." On cross-examination, in answer to a question as to whether Silver received a fee for collecting the $10,250, plaintiff answered that he did not know. Harry M. Ehrlich, Mrs. Anna Lyman, Michael D. Handler, Mrs. Estelle Handler, Fern Elliott, formerly Fern Handler, and Rose Handler testified in behalf of defendant. Their testimony tended to show that Ehrlich was brought into the case by plaintiff in order to collect accounts of the decedent which had not been theretofore inventoried or claimed by the administratrix or any creditor, and that plaintiff was acting in the interests of his client, Mrs. Lyman, so that she could collect her claim which had been allowed in the probate court of Cook county. There was testimony that Mrs. Lyman received two thirds of her claim. The other one third went to her attorney, Mr. Weinzelbaum. There was no testimony in behalf of defendant that any part of Weinzelbaum's fee went to plaintiff. He was paid for trying the case involving the claim in the probate court. The testimony of these witnesses tended to show that there was no agreement between defendant and plaintiff, or between defendant's clients and plaintiff, whereby any fee would be paid by defendant or defendant's clients to the plaintiff because of the recovery of accounts covered by the assignment, and this testimony was also to the effect

that the $500 which was paid to Ehrlich was not to come from either defendant or defendant's clients. Defendant, called in his own behalf, testified that the $1,500 allowed to him by Mrs. Handler, was in payment of his fee for services rendered from 1935 until the estate should be closed, and that he did not make any charge against Mrs. Handler or the Handler estate for services in connection with the collection of the $10,250. He also denied that he authorized plaintiff to hire Ehrlich, or to pay Ehrlich the $500. He stated that he was interested in obtaining a receipt from Ehrlich in order to protect his clients against any possible claim by Ehrlich, and that is why he insisted on such a receipt before turning over the $5,790 to plaintiff for Mrs. Lyman.

The court gave to the jury the following instruction:

"The court instructs the jury that the plaintiff, Emanuel Morris, in order to recover in this case must prove by a preponderance or greater weight of the evidence: First: That the employment of Harry M. Ehrlich and the services rendered in the collection of the claim against Barnet L. Stein, Frank Kaplan and the Little Dutch Candy Corporation, was done by reason of and pursuant to the terms of the agreement entered into between Estelle R. Handler, individually and as Administratrix of the Estate of Samuel W. Handler, Deceased, and Fern Handler and J. H. Silver and Emanuel Morris. Second: That the defendant, J. H. Silver, received moneys from Estelle R. Handler and Fern Handler, or either of them, for the purpose of paying for the services of Harry M. Ehrlich or as compensation for the services rendered by reason of and pursuant to the terms of said agreement; and if you find that the plaintiff has failed to prove either one of these propositions, then you will find the defendant not guilty." In his brief plaintiff concedes that this instruction states the law of the case. As to the $500 which plaintiff paid to Ehrlich, the evidence is clear that

defendant was acting only in his capacity as a lawyer for the estate, and for Mrs. Handler and her daughter in their individual capacities. There is no evidence from which the jury would be warranted in finding that defendant promised or was obligated to pay plaintiff the $500 which plaintiff paid to Ehrlich. Apparently, it is plaintiff's contention that the $1,500 which defendant retained in effect included the $500 which plaintiff paid to Ehrlich, and a fee of $1,000 to defendant. There is no evidence to sustain this contention. Plaintiff testified that he did not know whether defendant received a fee for collecting the $10,250. Defendant testified that he did not receive any fee and that the $1,500 which he received was for his services as attorney for the estate from 1935 on. Defendant's position is that neither plaintiff nor defendant performed any services in the collection of the $10,250, and that plaintiff's interest in collecting that sum was because he represented Mrs. Lyman, who, under the contract of September 21, 1939, would benefit by any collection made through the effort of Mr. Ehrlich. Plaintiff directs our attention to the following questions and answers directed to and answered by him while testifying in his own behalf: "Q. So as this stands now you and Mr. Ehrlich and Mr. Silver have effected the collection of $10,250, correct? A. We have. Q. And Mr. Ehrlich received $500 from you and Mr. Silver got $1,500 out of this money and what did you get out of this money? A. Nothing. Q. You are out the five hundred you gave Mr. Ehrlich? A. That's right." Plaintiff maintains that in the two questions and answers covered by the quoted testimony the jury had evidence tending to prove, first, that Morris and Silver were to divide the fee out of the moneys collected, and second, that Ehrlich got $500 and Silver got $1,500 and Morris got nothing. It will be observed that the second question embraces a statement by the interrogator that Mr. Ehrlich received $500 from plaintiff and Mr.

Silver received $1,500 "out of this money." The question asked plaintiff was, "and what did you get out of this money?" He answered, "Nothing." The statement by plaintiff's attorney that Ehrlich received $500 and Silver "got $1,500 out of this money" was apparently the conclusion of plaintiff's attorney. This testimony does not purport to show that defendant received any part of the $1,500 as a fee for effecting the collection of the $10,250. The statement that plaintiff was "out" the $500 which he gave Ehrlich could not be the basis for fastening liability on defendant. After a careful consideration of the record, we are satisfied that the court was right in deciding as a matter of law that plaintiff did not make out a case and in allowing the motion for judgment notwithstanding the verdict.

As a cross error, defendant contends that the assignment on which plaintiff's case is predicated is in contravention of public policy and of the statutes relating to the administration of decedents' estates, and that it is illegal and void. Defendant also asserts that even though this point was not raised during the trial, it may be raised at this time. The recitation of the record shows some irregularities. The parties stipulated on the restoration of the administratrix, who had been removed for cause. Apparently, these parties did not think that the probate court should be concerned with what they did. No authority was sought or obtained from the probate court for the assignment which was made. At the time it was made, Mrs. Handler was not the administratrix. She had been removed. Yet, she signed the agreement and assignment as administratrix. In September 1939, Mrs. Lyman gave a receipt to Mrs. Handler which purported to be in full settlement of the claim which had been allowed, although Mrs. Lyman did not actually receive payment in full until December 15, 1939. At the time of the trial of this case in January 1941,

484

the estate had not been closed. The reason given is that "another claim appeared." According to the audit by Irving Taub & Company, there were other claims which could be asserted by the administratrix, which apparently were not asserted. In view of our remarks as to the propriety of the action of the trial court in entering judgment against plaintiff, it is unnecessary to decide whether the assignment on which plaintiff's claim is predicated is contrary to public policy.

Because of the views expressed, the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

HEBEL and KILEY, JJ., concur.